Marshall, C. J.
It seems quite clear that the board of county commissioners by its resolution of May 17, 1919, intended to institute steps for an undergrade crossing under the railroad of defendant in accordance with Sections 6956-3, 8874, 8875 and S876 of the General Code. The third amended petition, however, does not contain any reference to that resolution or disclose that the board of county commissioners ever took any other action than the adoption of that resolution. The pleading does not allege any demand having been made upon the railroad company, or a failure of the county commissioners to agree with the railroad company as to the expediency or necessity of such an undererossing, or as to the location of same, or as to the plans, specifications and estimated costs of its construction. The pleading, while quite lengthy and while containing with considerable repetition many allegations about the conditions of the highway as it formerly was located, and concerning that portion of the highway as altered, and while setting out facts which strongly indicate the expediency of making the improvement, does not allege any demand upon the railroad company to co-operate in planning and executing an improvement, neither does it allege *116 any refusal on the part of the railroad company of such co-operation.
The statutes upon this subject, above referred to, do not give the county commissioners the power by the mere adoption of a resolution to make it obligatory upon a railroad company to construct a crossing. The statutes clearly contemplate a full measure of co-operation in bringing about a proper solution of the problem, which must be conceded to be difficult at best, and an appeal to the court is provided in Section 6956-3, General Code, only in the event that the county and the railway company can not agree.
Another difficulty presented by this record is found in the repeated allegations that the highway does branch from the main road as it existed in 1896, and does turn to the right where it goes under the railroad at the bank of the creek, and then turns sharply to the left back to the main highway. A fair construction of the language of the resolution of the county commissioners, if we may look to that resolution, clearly indicates that this departure is now a portion of the legal highway. We have examined the proceedings of the county commissioners, complete copies of which are attached as Exhibit C to the third amended petition, and without entering into a discussion of those provisions we are of the opinion that the statutes were substantially followed in those proceedings and that the change was in every way legal and unimpeachable. It may be that the description of the proposed change was not as definite as it might have been; but without any complaint being made the petition was acted upon, the surveyor made his survey and *117 reported it, and the survey does make it definite. The complaint that no notice was given of the filing of the petition must be overruled, because the journal of the county commissioners recites that notice was given according to law, and this record cannot be impeached at this time by a board composed of successors to the board as it then existed. In any event the road attempted to be established at that time was in fact accepted by the county commissioners and opened by their order, and has ever since been used by the public, covering a period of a quarter of a century, and would therefore be held to constitute a legal public highway even if there should be some technical defect in the proceedings for its establishment. This was so held in the case of City of Steubenville v. King, 23 Ohio St., 610. The same proposition was decided in the case of Silverthorne v. Parsons, 60 Ohio St., 331, and in that case it was held that the provisions of Section 4669, Revised Statutes, in effect at that time, automatically vacated that portion of the road which was rendered unnecessary by the alteration.
The provisions of Section 4669, Revised Statutes, were in full force at the time of the proceedings in 1896 and 1897, but we are of the opinion that that section does not apply because of this highway being a state road. The section applying to alterations in state roads was Section 4635, Revised Statutes, which at the time of these proceedings provided as follows :
“Sec. 4635. That all alteration of state roads heretofore or hereafter made and established, shall form a part of said road, and so much of the orig *118 inal road as lies between points at wbiob tbe alterations intersect shall be and remain vacated. ’ ’
The final order of the county commissioners, on January 17, 1897, was as follows: “First, that the change will put the said road under the railroad whereby it will make a much safer crossing. Second, the traveling public demands the change and a better road can be made at a reasonable expense. We have also determined that the public convenience requires that such alteration of said road shall be established and opened fifty feet in width.” It seems very clear from the foregoing order that it was intended to establish a new road and to thereafter discontinue the maintenance of the old road.
We do not deem it the proper province of this court to point out the further steps which should be taken by the county commissioners to bring about the improvement which it was desired by them to bring about, as indicated by their resolution of May 17, 1919. Neither is it the proper province of this court to point out the method whereby the road which was vacated in 1897 can be restored to usefulness as a public highway, but it is sufficient to say that the allegations of the petition, the resolution of the board of county commissioners, and the proceedings of the county commissioners in 1896 and 1897, whereby the alteration was made, show that the plaintiff is not entitled to the particular relief prayed for.
The prayer of the third amended petition is for the restoration of the vacated portion of the highway, but we have no hesitation in holding that the courts do not have jurisdiction to restore a vacated road. All establishments, changes and alterations *119 of county highways must be initiated in the office of the board of county commissioners.
The prayer of the third amended petition cannot be granted upon the allegations of that pleading, for the following reasons:
1. The courts for the reasons already stated have no power to restore an abandoned highway to its former usefulness.
2. The courts cannot order the establishment of an undergrade crossing at that point in the old abandoned highway, for the reason that that location is not in an existing legal highway, and for the further reason that the pleading does not allege the necessary preliminary steps to justify the court in making any order under and by virtue of the provisions of Section '6956-3, General Code.
3. The courts cannot make an order for the establishment of such undercrossing at a place fifty yards southwest of the above mentioned location, for the reason that it does not appear that a highway, or any kind of right of way or easement, approaches such location, and manifestly the railroad company would have no right to enter upon the premises at that point, if it desired to do so.
For all the foregoing reasons, the court of appeals did not err in sustaining the demurrer to the third amended petition, and its judgment is therefore affirmed.

Judgment affirmed.

Johnson, Hough, Wanamaker, Jones and Matthias, JJ., concur.